UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CROWN CASTLE NG EAST LLC,

        Plaintiff,

                **MEMORANDUM & ORDER**

    -against-            CV 17-3148 (GRB)

THE TOWN OF HEMPSTEAD, THE TOWN OF
HEMPSTEAD TOWN BOARD, JOHN ROTTKAMP
AS THE TOWN OF HEMPSTEAD BUILDING
DEPARTMENT COMMISSIONER (in his official
capacity), AND THE TOWN OF HEMPSTEAD
BOARD OF ZONING APPEALS,

        Defendants.

----------------------------------------------------------X
**GARY R. BROWN, United States Magistrate Judge:**

 Following this Court's decision denying cross-motions for summary judgment, Docket Entry ("DE") 29, both parties seek certification of questions for interlocutory appeal to the United States Court of Appeals for the Second Circuit. Because the parties have not satisfied the elements required for such certification, the motion is DENIED.

## BACKGROUND

 Plaintiff Crown Castle NG East LLC ("plaintiff" or "Crown Castle") is a provider of wireless electronic services. Crown Castle seeks various forms of relief arising from its attempts to construct and install 4G LTE towers in areas designated as rights of way owned by the defendant Town of Hempstead. Plaintiff's claims are based upon defendant's alleged failure to timely resolve plaintiff's applications for permission to construct these facilities, purported administrative roadblocks in connection with these installations and ostensibly discriminatory fees connected with

1

such applications. In a Memorandum and Order (the "Order"), which is incorporated by reference herein and familiarity with which is assumed, this Court denied cross-motions for summary judgment and resolved several other motions. *Crown Castle NG E. LLC v. Town of Hempstead*, No. CV 17-3148 (GRB), 2018 WL 6605857, at *3 (E.D.N.Y. Dec. 17, 2018). Specifically, the Court directed the parties "to meet and confer to determine if discovery, hearing and/or remand is required on the remaining claims, and if so, the scope and timing of said discovery as well as the remaining matters to be litigated." *Id.* at *11. Notwithstanding this Court's expressed preference for a joint status report, the parties filed separate reports. DE 30, 31. Crown Castle set forth a proposed discovery schedule, seeking to resolve, among other things, the question of available 3G service in the affected areas, and a possible hearing regarding alleged 47 U.S.C. § 332 violations. DE 30. Defendants ("defendants" or "The Town") requested a conference be held to determine whether discovery should await re-argument of the Order, and asserted that no discovery is required as the case should be based solely upon the administrative record. DE 31.

After several extensions of time were granted on the consent of the parties, plaintiff filed the instant motion for leave to appeal, which the Town joined. DE 38, 39. In its filing, the plaintiff identified two purportedly controlling issues of law for potential certification:

> (1) whether the denial of an application to deploy wireless facilities has "the effect of prohibiting the provision of personal wireless services" within the meaning of 47 U.S.C. § 332(c)(7)(B)(i)(II) where, as here, the undisputed facts show that the subject facilities would remedy a gap in 4G LTE coverage; and
>
> (2) whether the Hobbs Act, 28 U.S.C. § 2342, required the Court to accept as binding the Federal Communications Commission's ("FCC" or "Commission") legal interpretations of 47 U.S.C. § 332(c)(7)(B)(i)(II).

DE 38-1 at 6. The Town agreed that these questions should be certified and proposed a third question for certification:

> whether the 4G LTE service to be provided by Verizon from Crown Castle's DAS installations is a broadband internet service, which is an information service --

2

>   rather than an telecommunications service -- and thus not subject to the strictures of
>   47 U.S.C. § 332, which formed the basis for Crown Castle's causes of action.

DE 39 at 3 (citing Order at 4-13). Plaintiff does not believe this question is subject to certification. DE 40 at 2.

Both parties took the position that the Supreme Court's determination in the then-pending review of *Harris Chiropractic, Inc, v. PDR Network, LLC,* 883 F.3d 459 (4th Cir. 2018) might have had an effect on one or more of the pending issues for certification. After the Supreme Court issued its determination in June 2019, the Court directed the parties to brief its potential effect on the instant motion. Electronic Order dated June 25, 2019 (citing *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019) [hereinafter "*PDR*"]). The Town argued that "the majority opinion of the Supreme Court provided absolutely no insight, analysis, or determination as to resolving the tensions between Hobbs Act and *Chevron* as to the ability of a district court to interpret the provisions of the [Telecommunications Act of 1996 ("TCA")] or disregard the prior (conflicting or non-conflicting) interpretations of the FCC." DE 41 at 2. Plaintiff argued that *PDR* read only on the Hobbs Act issue raised, noting that the majority opinion "does not resolve the issue." DE 42 at 2. Plaintiff's counsel did make certain observations about the concurring opinions in *PDR*, which the Court will address below. *Id.* at 2-3.

## LEGAL STANDARD

*Authority of a Magistrate Judge to Certify a Question for Appeal*

A threshold question not addressed by the parties is whether the undersigned, who has assumed jurisdiction of this matter upon the consent of the parties under 28 U.S.C. § 636(c)(1), has the authority to certify a question for appeal under 28 U.S.C. §1292(b). That section provides, in relevant part, as follows:

3

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order . . .

28 U.S.C. §1292(b) (emphasis added). While the Second Circuit has not expressly held that a magistrate judge has authority to certify a question for appeal, several courts that have considered this question have so determined. *See Verizon New York Inc. v. Vill. of Westhampton Beach*, No. CV 11-252 (AKT), 2014 WL 12843520, at *6, n.6 (E.D.N.Y. Dec. 22, 2014) [hereinafter *Verizon*] (collecting cases). As such, the Court will assume for the purposes of this decision that the undersigned does have the authority to certify questions under §1292(b).

*Standard for Certification of Appeal*

As Magistrate Judge Tomlinson has observed:

> Section 1292(b) permits a party to appeal "an order not otherwise appealable" as of right upon certification by the district court and permission of the court of appeals. 28 U.S.C. § 1292(b); *see Nat'l Asbestos Workers Med. Fund v. Philip Morris*, 71 F. Supp. 2d 139, 145 (S.D.N.Y. 1999). A court may certify an order for interlocutory appeal under section 1292(b) only if it finds that three conditions have been met: first, that ruling on which the appeal is sought involves a controlling question of law; second, that there is substantial ground for a difference of opinion as to that controlling question of law; and, third, that an immediate appeal will materially advance the litigation. *Tyco Intern., Ltd. v. Kozkowski,* 02-CV-7317, 2011 WL 2038763, at *4 (S.D.N.Y. May 24, 2011) (citing 28 U.S.C. § 1292(b)); *see City of New York v. Milhelm Attea & Bros., Inc.,* No. 06-CV-03620, 2012 WL 4959502, at *3 (E.D.N.Y. Oct. 17, 2012).

> "As with the entry of partial judgments under Rule 54(b), the Second Circuit has held repeatedly that 'use of this § 1292(b) certification procedure should be strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Milhelm*, 2012 WL 4959502, at *3 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) ) (alteration omitted). To that end, certification under 1292(b) must be "reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-866 (2d

Cir. 1996); *see e.g. Tyco,* 2011 WL 2038763, at *4. Even where the moving party demonstrates that the statute's three conditions have been met, the district court retains "unfettered discretion" to deny this extraordinary relief. *In re Vitamin C Antitrust Litig.,* No. 06–MD–1738, 2012 WL 425234, at *1 (E.D.N.Y. Feb. 9, 2012) (internal quotation marks omitted); *see Milhelm,* 2012 WL 4959502, at *3 (*quoting Nat'l Asbestos,* 71 F.Supp.2d at 162).

*Verizon,* 2014 WL 12843520, at *5–6. With this standard firmly in mind, the Court turns to the application at bar.

## DISCUSSION

*Proposed Question 1: Personal Wireless Services/Gap in 4G LTE Coverage*

The first question is whether the actions by the Town in this case have "the effect of prohibiting the provision of personal wireless services" under 47 U.S.C. § 332(c)(7)(B)(i)(II), where the proposed facilities would remedy an undisputed gap in 4G LTE coverage. In the Order, this Court explored this issue in detail, examining binding appellate case law holding that "the plain focus of the statute is on whether it is possible for a user in a given remote location to reach a facility that can establish connections to the national telephone network," and holding that:

> A local government may also reject an application that seeks permission to construct more towers than the minimum required to provide wireless telephone services in a given area. A denial of such a request is not a prohibition of personal wireless services as long as fewer towers would provide users in the given area with some ability to reach a cell site.

*Crown Castle NG E. LLC*, 2018 WL 6605857, at *7 (quoting *Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630, 641-3 (2d Cir. 1999)). Thus, the Court determined that plaintiff's demonstration of a gap in 4G LTE service, without more, was insufficient to establish that the Town's determination ran afoul of 47 U.S.C. § 332(c)(7)(B)(i)(II). As previously noted, this Court is not alone in reaching a similar conclusion. *See Cellco P'ship v. Bd. of Sup'rs of Fairfax Cty., Va.*, 140 F. Supp. 3d 548, 582 (E.D. Va. 2015) ("plaintiffs' evidence demonstrates that there are existing Verizon sites in the

5

area providing coverage, that there is at most a one-mile gap in 4G LTE coverage but not in 3G or traditional voice coverage, and that Verizon wishes to improve 4G LTE coverage rather than resolve an absence of coverage. Such improvements may be desirable, but they are not protected from local decisionmaking under 47 U.S.C. § 332(c)(7)(B)(i)(II)"); *Clear Wireless LLC v. Bldg. Dep't of Vill. of Lynbrook,* No. 10-CV-5055 (ADS) (ETB), 2012 WL 826749, at *1 (E.D.N.Y. Mar. 8, 2012) ("Clearwire implied that a failure to upgrade to 4G could negatively impact Sprint's personal wireless services, leading to a deficiency in voice services, [but] offered no evidence to support this contention").

Based on these authorities, as well as the matters contained in the Order, the parties have failed to establish that there is "substantial ground for a difference of opinion" as to whether a gap only in 4G LTE service triggers the protections of 47 U.S.C. § 332(c)(7)(B)(i)(II). Moreover, because the parties have not indicated that the absence of evidence as to voice service generally—including the availability of 3G service in the subject area, certification will not necessarily "avoid protracted litigation." Collecting the missing evidence could well avoid the need for further litigation and, conversely, pursuing an interlocutory appeal on an incomplete factual record could well further extend the proceedings.

*Proposed Question 2: Effect of the Hobbs Act*

Plaintiff frames the second question as "whether the Hobbs Act required the Court to accept as binding the FCC's legal interpretation of 47 U.S.C. §332(c)(7)(B)(i)(II)," and that there are substantial grounds for difference of opinion on that question. DE 38-1 at 9. This is incorrect.

The parties' position is based on mischaracterizations of the Order. In sum and substance, both parties argue that this court relied upon "its interpretation of §332(c)(7)(B)(i)(II)" in lieu of the interpretations provided by the FCC. DE 38-1 at 7 (plaintiff further stating that this "Court

6

found the statute 'clear' within the meaning of *Chevron*"); DE 39 at 6 ("the Court circumvented the Town's analysis by determining that the widely acknowledged ambiguous provision of the TCA were somehow ambiguous"). Of course, this is not the case. As required by law, the Court explicitly applied the binding interpretation of the statute provided by established Second Circuit case law. *See, e.g.*, *Crown Castle NG E. LLC*, 2018 WL 6605857 at *5 ("the Second Circuit has provided a careful analysis and application of these provisions").

And the parties fail to meaningfully refute the controlling effect of this Second Circuit precedent. Plaintiff's solitary reference to the controlling *Willoth* decision suggests that this Court should reject the analysis of the Court of Appeals because "[t]he Commission further rejected [the Second Circuit's] view." DE 38-1 at 13. However, this position misperceives the role of the FCC in interpreting the law. *See Crown Castle NG E. LLC*, 2018 WL 6605857 at *10 ") (quoting *Clear Wireless*, 2012 WL 826749 at *9) ("as Judge Spatt observed, '[u]nder such a circumstance it is not up to the FCC to construe the TCA to say something it does not say.'"). Meanwhile, defendant derides "the decades old decision of *Willoth*," *see* DE 39 at 6, notwithstanding centuries-old cases are regularly cited as binding precedent even in this rapidly developing technological area. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 678 (2016) (Roberts, C.J., dissenting) (Telephone Act case quoting *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)).

As relevant herein, the Hobbs Act[1] provides as follows:

> The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the Federal Communications

---

[1] Originally entitled the "Administrative Orders Review Act," the moniker "Hobbs Act" has been applied to this section as well as a commonly-used statutory provision prohibiting extortion or robbery in interstate commerce, found at 18 U.S.C. § 1951. Both laws are named for former Alabama Senator Samuel Francis Hobbs (1887-1952). *See* YALE LAW LIBRARY DATABASE OF FEDERAL STATUTE NAMES, https://documents.law.yale.edu/hobbs-administrative-orders-review-act-1950-see-administrative-orders-review-act (LAST VISITED SEPT. 27, 2019); 91 CONG. REC. 11,912 (1945) (statement of Reb. Hobbs).

> Commission made reviewable by section 402(a) of title 47 . . .

28 U.S.C. § 2342(1).  Importantly, this is not a case in which this court has been asked to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" any FCC orders.  Rather, this is a dispute between private parties in which the parties cited FCC interpretations of Congressional statutes in a manner which was contrary to existing case law.

The concurring opinions in *PDR* prove helpful in this regard. Judge Kavanaugh's concurring opinion, joined by three other justices, undermines the position taken by the parties here:

> in short, the text of the Hobbs Act is best read to mean that PDR can argue that the agency's interpretation of the TCPA is wrong. And the District Court can decide what the statute means under the usual principles of statutory interpretation, affording appropriate respect to the agency's interpretation. By doing so, the District Court will not "determine the validity" of the agency order in violation of 28 U.S.C. § 2342.

*PDR*, 139 S. Ct. at 2064 (Kavanaugh, J., concurring).  Similarly, Justice Thomas's concurrence provides:

> the Hobbs Act would have no role to play in this case. This suit is a dispute between private parties, and petitioners did not ask the District Court to "enjoin, set aside, suspend," or "determine the validity of" any order of the Federal Communications Commission.

*Id.* at 2056 (Thomas, J., concurring).  In fact, the *PDR* majority suggested, without deciding, that "[i]f the relevant portion of the 2006 Order is the equivalent of an 'interpretive rule,' it may not be binding on a district court, and a district court therefore may not be required to adhere to it." *PDR*, 139 S. Ct. at 2055.  The FCC pronouncements relied upon the parties here fall squarely into the category of interpretive rules, and therefore are not binding interpretations of statutory law.  *Crown Castle NG E. LLC*, 2018 WL 6605857 at *9 ("the additional authorities cited by the parties are

'interpretive regulations, and thus entitled to deference only where persuasive'"); DE 38-1 at 12 (discussing how "the commission first interpreted" the statute, "clarified that interpretation" and – purportedly – "resolved a number of circuit splits on how the standard should be applied").

Because the Second Circuit has opined as to the meaning of the statute, there can be no "substantial grounds for difference of opinion" as to the binding nature of that interpretation.

*Proposed Question 3: Information Service vs. Telecommunications Service*

The third proposed question—posed by defendants over plaintiff's objection—asks whether the subject broadband internet 4G LTE service should be characterized as an information service, rather than an telecommunications service, and thus not subject to the strictures of 47 U.S.C. § 332. This is an important and difficult question subject to developing law. The parties suggest that "there is no controlling precedent on this issue." DE 40 at 2. At the same time, in its independent research, the Court has uncovered substantial—though still unsettled—authority on an analogous (though not identical) issue: the question of whether VoIP telephony constitutes an information or telecommunications service. *See, e.g.*, *Charter Advanced Servs. (MN), LLC v. Lange*, 903 F.3d 715 (8th Cir. 2018), *cert docketed*, No. 18-1386 (U.S. May 3, 2019). Thus, defendant may be correct that there is substantial grounds for a difference of opinion.

Nevertheless, defendant has failed to satisfy the final condition of the § 1292(b) criteria -- that an interlocutory appeal will materially advance the litigation. As Judge Azrack has explained

> A key consideration in determining whether to certify an order for interlocutory appeal is efficiency. The efficiency of both the district court and appellate court must be considered, weighing the benefit of avoiding an unnecessary trial against the inefficiency of having the appellate court hear multiple appeals in the same case. However the district court will also consider additional factors in determining whether to certify a decision for interlocutory appeal pursuant to Section 1292(b): (1) the benefit of further factual development and a complete record on appeal, particularly in rapidly developing or unsettled areas of the law; (2) the time an appeal would likely take; (3) the need for a stay pending appeal and the effect on the litigation, including discovery, that would result from a stay; and (4) the

9

probability that other issues may moot the need for the interlocutory appeal." *Leacock v. Nassau Health Corp.,* No. 08-CV-2401 (JMA) (GRB), 2016 WL 11491343, at *2 (E.D.N.Y. Mar. 3, 2016) (internal quotation marks and citations omitted),

Here, resolution of this question will not avoid protracted litigation. Plaintiff's complaint contains eight causes of action, DE 1, only three of which expressly invoke § 332. *See Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 631 (2d Cir. 1991) ("[I]t does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge, who sits alone and is intimately familiar with the whole case, revisit a portion of the case if he or she has erred in part and that portion is overturned following judication of the whole case"). As such, even assuming, *arguendo*, that the Court of Appeals determined the Act inapplicable, substantial litigation remains. DE 30-31. Having found that defendants failed to establish that the statute's three conditions have been met, the Court denies the request to certify this question for interlocutory appeal.

## CONCLUSION

Given the failure of the parties to establish that this case meets the "exceptional circumstances" envisioned by the Second Circuit for certification under 1292(b), the motions for interlocutory certification is DENIED. The parties shall, within 14 days, submit a joint status report along with a discovery schedule.

SO ORDERED.

Dated: Central Islip, New York
      October 15, 2019

                                            /s/ Gary R. Brown
                                            GARY R. BROWN
                                            United States Magistrate Judge